We hope to maintain a semblance of our time limit, so when the yellow light comes on, we ask you to start concluding your remarks for two minutes, and the red light means you should stop talking unless the court has a question for you. Also, we are familiar with the briefs and record excerpts, but normally have not read the record before oral argument, so we do appreciate record citations when those are appropriate. The first case of the morning is number 22-20650, United States v. De Bruhl-Daniels, and we'll hear from Mr. Martin. And at the outset, let me suggest, if my co-panelists agree, I hadn't talked in advance, we don't need to hear a whole lot about the issue that's before the Supreme Court, because we don't care. They're going to decide it for us, so we're more interested, right? We're using this argument to further the case, so that when the Supreme Court comes out, if we need to, we'll ask for further briefing, or we'll just decide it on the basis of the Supreme Court decision. That's fine with me, Your Honor. Okay. Yes, sir. May it please the Court, my name is Scott Martin, counsel for Ms. De Bruhl. The district court erred at trial when it denied Ms. De Bruhl's Rule 29 motion for a judgment of acquittal on the terrorism enhancement for a false statement count, count 24, and also erred before trial when it denied her vagueness challenge to that enhancement. The court additionally erred when it denied her pre-trial motion to dismiss the obstruction charges in counts 15, 36, and 37 for failing the state defense under section 1512C2, but as we've agreed, I'm not going to address that today, so I'll address the first two issues in order. Regarding count 24, our argument is that for the terrorism enhancement to apply in a false statement case under A1, the government needs to prove that the defendant falsified, concealed, or domestic terrorism, which the government failed to do here. This is the correct reading of the language of the offense involves terrorism clause in section 1001A. Here, like in Shular, the Supreme Court ACCA case, the parties are in agreement that involves, the word involves means to include as a necessary circumstance, condition, or consequence, or necessarily requires. The descriptive terms immediately following the word involves identify conduct, that is, international or domestic terrorism as defined by section 2331. But it doesn't say an act of, it just says involving terrorism, or it involves international or domestic terrorism. That's true, Your Honor, but Shular says that it's natural to say that an offense involves or requires certain conduct. That's directly said, there's a difference, I think, between an act of terrorism versus something that involves terrorism, isn't there? Well, Your Honor, the acts of terrorism are defined in section 2331. It means activities that involve violent acts or acts dangerous to human life that are a violation of the criminal laws. There's another involve in that statute as well. In other words, international terrorism means activities that involve violent acts. That's true, that require those activities. For example, providing material support to a terrorist group would involve or require acts of terrorism that meet this definition, dangerous acts. But isn't that what the subjects of this counterterrorism investigation were purportedly doing? Well, reportedly, yes, Your Honor, that was their charge, that it was an investigation, but there was no evidence of a link. There wasn't any evidence because she tipped them off. Well, Your Honor, there was no evidence provided that this actually happened at all. I mean, there was a limiting instruction. Let me clear one thing up, the government. Wait a minute. I thought there was a GPS tracking device on some piece of oil field equipment that went directly to Iran. That's correct, Your Honor, but that was not the act that was alleged to be the act of terrorism in this case. The government was alleging that, the allegation was that she provided statements to an FBI special agent that concealed that she had informed Dia that he was the target of an FBI... Well, I'm well aware of that. I'm talking about the underlying conduct. Right. The underlying conduct, the testimony by Special Agent Maddox was about ISIS, and it was an investigation into whether Arafat, who was Mr. Nadal Dia's business partner, was procuring ambulances for ISIS, but no link to ISIS was ever proven here. Eric Maddox, NCS, was asked to explain to the jury his understanding of the investigation as it related to Mr. Arafat and ISIS, and he responded, Arafat was involved in negotiating the delivery of ambulances, the procurement delivery of ambulances for ISIS, but the judge gave a limiting instruction, that's at row 2328, that this particular testimony is not being introduced for the truth of the matter, but is being introduced for the purpose of his understanding of the investigation. Even the government acknowledged in this trial that it did not find out if there was actual terrorism involved here, that's at row 2395, that was in response to our rule 29 argument, and it did not find out, quote, the exact connections between Labib, Arafat, and ISIS. And as the district court observed in this case, the government put forth evidence that law enforcement investigated Dia and Arafat for potential ties to ISIS, but did not prove beyond a reasonable doubt that either Dia or Arafat engaged in international terrorism properly defined. Well, surely you don't need to prove, I mean, investigation is one thing, but surely you don't need to prove the underlying terrorism offense, right, beyond a reasonable doubt, in order to say there was a false statement. Well, there's two things, Your Honor. To prove there's a false statement, that's, you don't need to, but to have the terrorism enhancement, you do need to. Our argument, this statute is focused on conduct, again, an offense that involves or requires certain conduct. The conduct here is whether the charged offense necessarily requires terrorism. How does your definition of involves not conflate actual acts of terrorism? I mean, in other words, is that the universe? Is there anything that's more attenuated than an actual act of terrorism? The conduct itself? Your Honor, the conduct is, we believe the conduct was defined in section 2331. But I mean, why do you need the word involves or the other statutory language if your definition really constricts it only to what's already there in the statute as far as conduct? Well, because you're talking about the offense relates to the false statement. It's not the matter. The investigation is the matter under the statute. We know that from Rogers. FBI criminal investigation can be the matter. And then the statute says if the offense involves international or domestic terrorism. So it doesn't say matter, it says offense. And then the next sentence says if the matter relates to an offense under chapters 109A, 109B, those are various sex offenses. So when the statute wants to talk about an investigation, it uses the word matter. So offense must mean something else. And viewed in context, the best reading is that it requires an act of terrorism. And that's because the false statement requires there to be a statement about an act of terrorism because of the title of the statute. Statements or entries generally suggest the statute's focused on false statements and entries. And it's clear from the statute's explicit reference to 203331's definitions of international and domestic terrorism, the fact concealed by the false statement or entry must be a fact or at least strongly related to an actual violent or dangerous act following within one of 2331's definitions of terrorism. Now the government here has not argued that DeBrule's act of informing DITA that he was a target of a counterterrorism investigation or her subsequent concealment of that act via her false statement was itself a violent or dangerous criminal act that appeared to be intended to intimidate or coerce a civilian population, to influence the policy of a government by intimidation or coercion, or to affect the conduct of a government by mass destruction, assassination, or kidnapping. Those are the 2331 definitions. More importantly, the government did not argue that at trial. Its theory at trial in its closing argument, row 2665-66, is that she didn't want DITA to be arrested because he was her boyfriend and she had affections for him. Also, if he was arrested, he might mention her name and that would jeopardize her job. That's at row 2665-66. That's not the same as alleging that her concealment of her disclosure to DITA falls within the definition of terrorism under 2331. I don't think it has to, does it? I mean, it doesn't really, the statutory language doesn't focus on the intent of the perpetrator, it's whether it involves terrorism. Well, and that, and your honor, that gets back to my reading of the statute based on Shular, that you require this conduct. And at a baseline, you need terrorism. At some point, you know, there needs to be an act of terrorism, not just imagined or suspected links to a terrorist organization, which is, all we have here is special agent Maddox testifying that his understanding of the. Let's take the whole, this comes out of the Holy Land Foundation, but it was known that Hamas or Hezbollah was engaged in selling cigarettes in the United States in such way as to avoid, I've heard it was a black market in various states where cigarette tax was higher or lower. And Hezbollah or Hamas was engaged in that, and from the illicit profits that they gained, they would fund terrorist activities in the Middle East. So suppose you arrest a girlfriend of one of the people engaged in that black market operation, and the girlfriend lies about what her boyfriend is doing. Now, wouldn't that involve terrorism? That would be a closer case because what you're suggesting there is actual material support for a terrorist organization, evidence of that, and if she was aware of that, that could potentially be a dangerous act that falls within the definition of 2330. So you're willing to expand to some extent to be realistic about what involves terrorism? Well, your honor, I feel that my But I think at a minimum, you need evidence of an act of terrorism, not just evidence of an investigation of terrorism. But by not selling black market cigarettes, you're willing to concede that that's an act of terrorism? Not in and of itself, your honor. If the black market cigarettes were being sold by Hezbollah in the United States, and the defendant knew that the proceeds of these were going to fund terrorist operations in another country, and Mr. Brewer didn't presumably, there's no information about what she knew about what these fellows were doing, right? There was testimony that she that from other than special agent Whitehurst that there was an investigation that she told Mr. Brewer that there was an investigation involving ISIS, however generic that is. But again, as I said before, there was no testimony at trial about any such links, nothing. Well, she knew they were flagged, they were red flagged in the system. She knew that yes, she had her own colleagues in the Intel community saying stay away from him, because he's he's connected to this or that. Or there were there were plenty of indicators. How's this not a jury question? Well, your honor, the the judge sent it to this charge to the jury, because he, the judge believed that all you needed was some non trivial link to terrorism generally, and that there was a terrorism investigation. And that was enough. It's not we've argued generally, I mean, you're talking about ISIS, you're talking about alleged material support of ISIS by these business men. And you're talking about an investigation into that to substantiate it. I mean, I guess your position is that, to the extent that the false statement frustrates an investigation, so that the underlying connections to terrorism are not proved, then this can apply. That's correct. But that it also assumes that there were any to begin with. I mean, in this case, these two men were charged with passport fraud. And they were charged with passport fraud, because that's all they could get them on. Because in part, she tipped them off. Well, again, your honor, there was absolutely no evidence presented there was any such link to begin with. Well, but but there again, he was arrested in Canada. And she had already told him, if you come back to the United States, you're going to be arrested. She hadn't told him that and he came back to the United States, there may well have been a treasure trove of evidence that would have substantiated all of this well, such as they could have taken his cell order. Well, that's what the government argues. But our argument is that you do have to prove an actual link to terrorism, it can't be a suspected link. And that there are other ways of gathering evidence on terrorist operations. And in this case, she made the false statement in the process that it was too early to apply the enhancement if she just wait a little bit longer, or allowed him to get arrested, she could have it could have been applied. Oh, I'm not saying it could have been applied at all, because we're saying there's no evidence of terrorism here. And again, as I said, the government has presented no evidence of an actual link between Arafat and terrorism, or Dia and ISIS. And, and our argument is not that she shouldn't be convicted of the false statement is that she shouldn't be convicted of the terrorist enhancement for the false statement, which requires more requires, as the statute says, an offense that involves meaning offense that requires terrorism, which is the conduct defined in Section 2331. And that and that conduct does not include an investigation. One thing out of time at on rebuttal, if you tell me what's your best legal proposition that the false statement must be about terrorist activity. Thank you. And wait, wait, wait, I have one. Just a quick question. So she's convicted of counts, several counts, and I gather that your appeal does not involve, so to speak, counts 15 and 21 to 23. Is that right? That's correct. We're talking specifically about count 24, which is the only false statement count that had the default of the terrorism enhancement. Okay. And the course. Okay, fine. All right, Miss Glory. Good morning. May it please the court. Anna Cleary on behalf of the United States. The offense here involved international terrorism because to bruise concealment of a material fact during her debrief derailed a counterterrorism investigation into ISIS, a violent international terrorist organization. As DeBruyne admitted, she knew that her false statements would influence the FBI's investigation into terrorist activity. Her admission about the repercussions of her disclosure to do was consistent with the testimony of multiple law enforcement officers. Thus, the evidence was sufficient to support the jury's verdict on count 24 for the interest for the terrorism enhancement. The defendant reads the statute very, very narrowly, as this court has discussed before, Section 1001 A. First, we had to prove that DeBruyne falsified, concealed, or covered up by trick, scheme, or device a material fact. Then, in a second section, the offense limit rises if the offense involves international or domestic terrorism as defined in 2331. Then after that, we move to 2331. International terrorism means activities that involve violent acts. Defendant conflates all of these together to produce absurd results here. So, for example, under the defendant's reading that this had to be the lie or concealment had to do with an actual act of terrorism, would, for example, foreclose a person who called Osama bin Laden and said, Seal Team 6 is on the way. Get out of where went, and then lied about it to federal investigators. That obviously involves terrorism. That is not a specific act of violence, but it would qualify under this. It would also, for example, exclude a person who provided material support or propaganda and then lied about it to officers to a terrorist, provided material support or propaganda about a terrorist organization and then lied about it to investigators. So, it also excludes someone like that. So, the defendant's reading of this statute is very narrow. It's contrary to the language and the structure of the statute. Well, but what about what counsel's position is that there was nothing proven here? It was just an investigation. The Osama bin Laden example, he was a known and wanted fugitive from multiple laws or whatever. I mean, he was a known terrorist. He took responsibility for 9-11, and so by the time they were coming in, he was a terrorist. Well, that's not the case with the suspects of this investigation. True, but by definition, a counterterrorism investigation is the investigation into terrorism, and here it was only derailed because of her statements to the government. Well, I mean, but is it? I mean, the government's position really is that, well, it necessarily — counterterrorism investigation, therefore the enhancements applicable. I mean, isn't that a little too broad? No, in this case, it's not too broad, and there are limits on that. We agree that it does have some limits, and that keeps it from becoming — What are the limits? So, the two definitions that both counsel and I agree on are to have within or part of itself, require as a necessary accompaniment, includes as a necessary circumstance, condition, or consequence. Here, DeBrule admitted that her statements to the FBI agents during the debrief derailed the investigation into terrorism. She knew that going into it, so there is a spectrum here, but here, we are talking about something that is well within the heartland of involving terrorism. This was an investigation into a terrorist group. It was ISIS. Can the government just say, well, this investigation is a counterterrorism investigation, therefore it's going to apply for any false statement, et cetera? In other words, how much has to be substantiated before the enhancement can apply? I'm not sure what the bottom limit is on that, but I know that here, we have plenty of that. As Your Honor noted earlier, there were many colleagues of hers who informed her that this was an investigation into terrorism. She saw it on a computer screen. She spoke to numerous agents about this. She was well aware before she made these statements, over a series of about a year, about the investigation into DIA and to Arafat. So, this was clear to her from the beginning. It wasn't something that she made a statement, and she wasn't aware, or she found out two minutes prior to that. How does the fact that she was — I'm sorry to cut you off, but I wanted to get this last question in. How does the fact that she was in the intel community impact this, as opposed to a girlfriend of somebody selling cigarettes in Manhattan, I mean, for Hamas? Well, the standard is the ordinary person, right? So, I think there is an elevated element here that she did know, and she had access to — just factually, she had access to more information than an ordinary person. But it is the ordinary person's standard. What is — what's — it just occurs to me, what's the corresponding definition of domestic terrorism? So, the jury was actually — I don't have it in front of me. The jury was actually — I know that. But whatever we say involves international terrorism could also involve an investigation into domestic terrorism, which is an issue with which much of the public is currently concerned. It can't. And there are two — the statute actually covers both international and domestic. And here, we decided to preside on — What's the difference between the statutes? Is the only difference the subsection 2331.1c that occurs primarily in an international, occurs primarily outside the territorial jurisdiction? I believe so, Your Honor. So, otherwise, domestic terrorism is in violent acts or dangerous to human life that appear to be intended to intimidate or coerce a civilian population, influence the policy of a government, or so on. So, I'm wondering if that's the only distinction. Then, you know, the government has been investigating Catholics who go to Latin mass. And if the government calls them potential domestic terrorists, and somebody appears to not be telling the truth, then according to your logic and your expansive definition, including investigations, those people are guilty under — up for an enhancement under 1001, correct? Well, I believe that's a factual question that should go to the jury. The jury was required to find that this was an internet that — Well, it's the government that defines what this terrorism is and says, we're investigating domestic terrorism. We're investigating international terrorism. True. That is the allegation that the government would make, but they would still have to prove that to a jury in the definition — Well, what did they prove to this jury that had — other than these guys are violating the export laws? It was the NCIS agent, Assistant Director Maddox. He testified about ISIS and the nature of ISIS and the — We know what ISIS — I mean, yes. Everyone knows what ISIS is. But was there a single fact in evidence about any specific connection of DIA or Arafat with ISIS? No. The testimony was that they were investigating their links to ISIS. And under the statute, they did not have to prove a specific act of terrorism. Well, that's the issue before us, isn't it? The interpretation of the statute, correct. The defendant does not argue that ISIS and the activities of ISIS actually satisfy this definition. What the defendant argues is that there has to be — the lie has to be related to a specific act. And that's simply not the reading of the statute. Do you know why there isn't any case law interpreting the terrorism enhancement of 1001? Has the government applied it in other cases? Not that I'm aware of. There wasn't much case law out there. Right. You don't know why. No. No. I would assume, just speaking broadly here, I would assume that this is the rare instance where the defendant's lies and acts actually stopped the investigation. If the investigation continued and there was a direct link at more than what we have here, rather than the offense just involving, then there would be more substantive charges that we could bring and we would move with that. Well, these people have been under surveillance since 2014, right? Correct. And these events occurred in 2018? Correct. So that's — I mean, I understand some of these things take a long time to mature, but you would think that given all the international surveillance that occurs, if there had been a single connection between either of these defendants and ISIS or the IGRC or some — I don't know what's the name in Iran — that the government could easily have introduced that. Yes, Your Honor, except for it was not necessary to prove a violation of 1001. Well, that's your argument anyway. It is. If there are any other questions, I'll rest on my brief. Okay. Thank you. Your Honor, Judge Clement asked what's our best case. As the government counsel said, there really aren't many. We've cited Shular, the ACCA case for the way to read the statute. That was a case where the court interpreted serious drug offense under the Armed Career Criminal Act, which is defined as an offense under state law involving manufacturing, distributing, or possessing with intent to — So involve is definitely narrower than related to. Yes, Your Honor. Is that right? Yes, Your Honor. And that is our position, and the government agrees with that position. And I'd like to address one of Judge Wilson's questions about kind of what's the limit here. Could the government just, in every false statements case, say, oh, we're investigating terrorism, too. And then if you make a false statement, then they're going to automatically apply the terrorism enhancement to you because they said they're investigating terrorism. This goes to our vagueness argument about potential arbitrary enforcement. Our position is this is case — you know, in this case, the government effort to apply the terrorism enhancement rule based on her concealment via a false statement of an act that does not fit within 2331's definitions of terrorism, without even knowing if there was actual terrorism involved here. The government said that, row of 2395. And without knowing the exact connections between Arafat and ISIS, and with no evidence of those connections, is exactly the kind of arbitrary enforcement that the Due Process Clause — Well, the counter to that would be if the risk is of arbitrary enforcement or expanding the statute to apply to a lot of things, it hadn't happened, we'd have cases, right? And the dearth of cases sort of counters the idea that this is an elastic enough statute to do that. That's correct, Your Honor. But looking ahead to the — you can imagine all the situations that the government could apply this, not just to international groups, but domestic groups as to — I mean, that may be true of any number of statutes, that we could imagine all sorts of things. But if they're not happening, it's sort of the dog that didn't bark. Well, Your Honor, it certainly barked in this case. Well — Ms. DeBruyll is facing an 84-month sentence where she otherwise would have been capped in five years for this offense. So our position is that this enhancement shouldn't apply whenever the government just suspects or imagines that there could be some link to terrorism by some third party who's somehow involved in a false statement that's made. So, Your Honors, unless there are any further questions, I'll rest on my briefs. All right. Thank you very much. Thank you.